7/21/2012 04:05 PM  Csh 0031  Reg 0047
T/Ref 0047044029 Grp 000001 R/L# 000002
01 - Main Location
$0.00
Validation Number: 0047-046649
000224
0000-1300-409910-130000000-999999
9999999999
Parcel Number: 16100706
Doc Type: Deeds of Trust
Consideration Amount: $0.00



OF CARROLLTON BANK

———————— [Space Above This Line For Recording Data] ————————

**THE PROPERTY IS THE BORROWER'S PRINCIPAL RESIDENCE**

# PURCHASE MONEY
# DEED OF TRUST

FHA CASE NO.

MIN:

THIS DEED OF TRUST ("Security Instrument") is made on  APRIL 20, 2012
The grantor is  MANNY O. AMOAKO AND MAYFAIR A. AMOAKO, 5406 PHELPS LUCK
DRIVE, COLUMBIA, MARYLAND 21045

("Borrower").

The trustee is  ROBERT A. ALTIERI, A MARYLAND CORPORATION
9515 DEERECO ROAD, SUITE 400, TIMONIUM, MARYLAND 21093     ("Trustee").
The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
CARROLLTON MORTGAGE SERVICES, A DIVISION OF CARROLLTON BANK, A
MARYLAND CORPORATION                                          ("Lender")
is organized and existing under the laws of  MARYLAND
and has an address of  9515 DEERECO ROAD, SUITE 400, TIMONIUM, MARYLAND
21093
Borrower owes Lender the principal sum of  TWO HUNDRED NINETY-ONE THOUSAND NINE
HUNDRED SEVEN AND 00/100           Dollars (U.S. $ 291,907.00       ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on  MAY 1, 2042      .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in HOWARD                        County, Maryland:

FHA MARYLAND DEED OF TRUST - MERS
MDDOTZ.FHA 03/23/12                      Page 1 of 10                  DocMagic eForms
                                                                       www.docmagic.com

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".

(All or part of the purchase price of the Property is paid for with the money loaned.)

which has the address of    5406 PHELPS LUCK DRIVE

[Street]

COLUMBIA         , Maryland   21045      ("Property Address"):

[City]                          [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

FHA MARYLAND DEED OF TRUST - MERS
MDDOTZ.FHA 03/23/12          Page 2 of 10          DocMagic eForms
www.docmagic.com

Legal Description

BEING KNOWN AND DESIGNATED as Lot No. 31 as shown on a Plat entitled, "Columbia Village of Longreach, Section 1, Area 1, Sheet 5 of 23", which Plat is recorded among the Land Records of Howard County, Maryland in Plat Book 18, at folio 45.

The improvements thereon being known as 5406 Phelps Luck Drive

Tax ID#

Case 18-17954    Doc 58-3    Filed 09/10/19    Page 3 of 18

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**
   (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:
       (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or
       (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.
   (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:
       (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and
       (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.
   (c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

FHA MARYLAND DEED OF TRUST - MERS
MDDOTZ.FHA  03/23/12                    Page 4 of 10                    DocMagic eForms
                                                                         www.docmagic.com

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

FHA MARYLAND DEED OF TRUST - MERS
MDDOTZ.FHA 03/23/12                    Page 5 of 10                    DocMagic eForms
                                                                       www.docmagic.com

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale, assent to decree, and/or any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.000 % of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

FHA MARYLAND DEED OF TRUST - MERS
MDDOTZ.FHA 03/23/12    Page 6 of 10    DocMagic eForms
www.docmagic.com

Borrower, in accordance with Title 14, chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this paragraph 18 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

21. **Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to paragraph 9 of this Security Instrument.

22. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☒ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☐ Other [Specify] | |

X TAX EXEMPT FINANCING RIDER

FHA MARYLAND DEED OF TRUST - MERS
MDDOTZ.FHA 03/23/12                    Page 7 of 10                    DocMagic eForms
                                                                       www.docmagic.com

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 10 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
MANNY O. AMOAKO                 -Borrower

_____ (Seal)
MAYFAIR A. AMOAKO               -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

_____ (Seal)
                                -Borrower

Witness: _____

Witness: _____

FHA MARYLAND DEED OF TRUST - MERS
MDDOTZ.FHA 03/23/12                Page 8 of 10                DocMagic eForms
                                                               www.docmagic.com

1BE14030 0004 10

——————————— [Space Below This Line For Acknowledgment] ———————————

State of __MARYLAND__

County of __HOWARD__

On this the __20Th__ day of __April 2012__,

before me, __NORA LAROSA__,

the undersigned officer, personally appeared __MANNY O. AMOAKO AND MAYFAIR A. AMOAKO__

_____,

_____,

known to me (or satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged that he/she/they executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

[Notary Seal: NORA LA ROSA, NOTARY PUBLIC, MY COMMISSION EXPIRES 11/8/2014, BALTIMORE COUNTY, MD]
(Seal)

_Settlement Office_
Title of Officer

My commission expires: __11-8-14__

State of MARYLAND

County of HOWARD

On this 20th day of APRIL 2012, before me, the undersigned officer, personally appeared JEFF SUSSMAN

the _____ of the said _____

and made affirmation in due form of law that he or she is an agent

of the party secured by the foregoing deed of trust and that the consideration recited in said deed of trust is true and bona fide as therein set forth; and if this is a purchase money loan transaction, that the actual sum of money advanced at the closing transaction by the secured party(ies) was paid over and disbursed by the party(ies) secured by the deed of trust to either the borrower(s) or the person(s) responsible for disbursement of funds in the closing transaction or his/her/their respective agent at a time no later than the execution and delivery of the deed of trust by the borrower.

As witness, my hand and notarial seal.

[Notary Seal: NORA LA ROSA, NOTARY PUBLIC, BALTIMORE COUNTY, MD, MY COMMISSION EXPIRES 11/8/2014]

RPI 63662

Signature

NORA LAROSA
Typewritten or Printed Name of Notary Public

Notary Public
My Commission expires: 11-8-14

CERTIFICATION: This is to certify that this deed of trust:

☐ was prepared by or under the supervision of _____, an attorney licensed to practice law in the state of Maryland.

☒ was prepared by Carrollton Mortgage Services, one of the parties to the instrument.

Lisa Null    4/20/12    Lisa Null
Signature    Date       Typewritten or Printed Name

Its: Closer

LIBER 14030 folio 412

Loan Number:

Date: APRIL 20, 2012

Property Address: 5406 PHELPS LUCK DRIVE
COLUMBIA, MARYLAND 21045

# EXHIBIT "A"

## LEGAL DESCRIPTION

A.P.N. # :

DocMagic eForms
www.docmagic.com

FHA Case No.: ███████
Loan Number: ███████

# FHA PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made this 20th day of APRIL, 2012, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to CARROLLTON MORTGAGE SERVICES, A DIVISION OF CARROLLTON BANK, A MARYLAND CORPORATION ("Lender") of the same date and covering the Property described in the Security Instrument and located at:

5406 PHELPS LUCK DRIVE, COLUMBIA, MARYLAND 21045

[Property Address]

The Property is part of a planned unit development ("PUD") known as:

COLUMBIA VILLAGE OF LONG REACH

[Name of Planned Unit Development]

PUD COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. So long as the Owners Association (or equivalent entity holding title to common areas and facilities), acting as trustee for the homeowners, maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the property located in the PUD, including all improvements now existing or hereafter erected on the mortgaged premises, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of the Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners' Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B. Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the PUD.

C. If Borrower does not pay PUD dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this PUD Rider.

_____ (Seal)
MANNY O. AMOAKO    -Borrower

_____ (Seal)
MAYFAIR A. AMOAKO    -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

FHA - MULTISTATE PUD RIDER
USFHAP.RDR 10/29/08         Page 2 of 2         DocMagic eForms
www.docmagic.com

Loan Number: ███

# TAX-EXEMPT FINANCING RIDER

THIS TAX-EXEMPT FINANCING RIDER is made this 20th day of APRIL, 2012, and is incorporated into and shall be deemed to amend and supplement the Deed of Trust of same date herewith (hereinafter referred to as the "Security Instrument") given by MANNY O. AMOAKO, MAYFAIR A. AMOAKO (the "Borrower") to secure Borrower's Note ("Note") of same date to CARROLLTON MORTGAGE SERVICES, A DIVISION OF CARROLLTON or any subsequent holder of the Note (the "Lender"), which Note is expected to be assigned to the CommunityBANK Development Administration, and covering the property described in the Security Instrument and located at: 5406 PHELPS LUCK DRIVE, COLUMBIA, MARYLAND 21045 (property address).

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree to amend Paragraph 9 of the Security Instrument, entitled "Grounds for Acceleration of Debt" by adding additional grounds for acceleration as follows, in the case of an FHA loan (or in the case of a VA or USDA/RD(RHS), privately insured loan, or other loan to amend the Security Instrument by incorporating the following additional language):

1. Lender, or such of its successors or assigns as may, by separate instrument, assume responsibility for assuring compliance by the Borrower with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if:

   (a) All or part of the property is sold or otherwise transferred by Borrower to a purchaser or other transferee:

   (i) who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Section 143(c) and (i)(2) of the Internal Revenue Code; or (ii) who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of sale or transfer, all as provided in Section 143(d) and (i)(2) of the Internal Revenue Code (except that the language "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143(d)(1); or

   (ii) who has had a present ownership interest in a principal residence during any part of the three-year period ending on that date of sale or transfer, all as provided in Section 143(d) and (i)(2) of the Internal Revenue Code (except that the language "100 percent" shall be substituted for "95 percent or more" where the Latter appears in Section 143 (d)(1)); or

   (iii) at an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or

   (iv) who has a gross family income in excess of the applicable percentage of the applicable median family income as provided in Sections 143(f) and (i)(2) of the Internal Revenue Code; or

   (v) who fails, on or before the date of the proposed transfer, to submit to the Lender certifications, affidavits, and information concerning conditions 1(a)(i) through (iv) above, that confirm compliance with conditions 1(a)(i) through (iv) for purposes of the Internal Revenue Code.

TAX-EXEMPT FINANCING RIDER
TEFR2.HFA 11/27/06

Page 1 of 2

DocMagic *eForms*
www.docmagic.com

BK 14030 PG 415

   (b)   Borrower fails to occupy the property described in the Security Instrument without Lender's prior written consent; or

   (c)   Borrower omits or misrepresents a fact that is material with respect to the provisions of Section 143 of the Internal Revenue Code in any document executed by the Borrower in connection with an application for this Security Instrument.

2.    References are to the Internal Revenue Code as amended and in effect on the date of issuance of bonds, the proceeds of which are used to finance the loan secured by the Security Instrument or the purchase of the loan, and are deemed to include the implementing regulations.

3.    The Security Instrument is a purchase money deed of trust and secures, in whole or in part, the purchase money for the property described in the Security Instrument.

4.    IN WITNESS WHEREOF, Borrower accepts and agrees to the terms and provisions of this Tax-Exempt Financing Rider and has executed said Rider, on the day and year first above written.

WITNESS:

_____ (Seal)      _____ (Seal)
MANNY O. AMOAKO     -Borrower      MAYFAIR A. AMOAKO     -Borrower

_____ (Seal)      _____ (Seal)
                                -Borrower                                  -Borrower

_____ (Seal)      _____ (Seal)
                                -Borrower                                  -Borrower

LIBER 14030 FOLIO 17

# LICENSEE INFORMATION OR AFFIDAVIT FILED IN ACCORDANCE WITH REAL PROPERTY ARTICLE, §3-104.1, ANNOTATED CODE OF MARYLAND

## Licensee Information

Maryland Mortgage Lender Name: Carrollton Mortgage Services, A Division of Carrollton Bank

Maryland Mortgage Lender License Number:

Maryland Mortgage Originator Name:

Maryland Mortgage Originator License Number:

### Affidavit in Lieu of Maryland Mortgage Lender or Maryland Mortgage Originator Licensee Information

(Check the box and complete the information for the applicable selection(s) below. As used herein, the term "Loan" means the mortgage loan secured by the security instrument attached hereto.)

**Affidavit of Individual Mortgage Originator:**
☐ I, _____, whose address is _____,
hereby affirm, under the penalties of perjury, that I am the individual who originated the Loan and, in connection therewith, I am exempt from the licensing requirements under Financial Institutions Article, §§11-601 through 11-618, Annotated Code of Maryland.

**Affidavit of Lender:**
☒ I, BRIAN D. BOGDAN, VICE PRESIDENT of Carrollton Mortgage Services, A Division of Carrollton Bank, hereby affirm, under the penalties of perjury, that I am the (the "Lender").
The Lender's address is 9515 DEERECO ROAD, SUITE 400, TIMONIUM, MARYLAND 21093.
I am duly authorized by the Lender to execute this affidavit. The Lender, in connection with the Loan, is exempt from the licensing requirements under Financial Institutions Article, §§11-501 through 11-524, Annotated Code of Maryland.

**Affidavit of Lender (on its own behalf and on behalf of its employee who originated the Loan):**
☐ I, _____ of _____, hereby affirm, under the penalties of perjury, that I am the (the "Lender").
The Lender's address is _____.
I am duly authorized by the Lender to execute this affidavit. The Lender, in connection with the Loan, is exempt from the licensing requirements under Financial Institutions Article, §§11-501 through 11-524, Annotated Code of Maryland. The employee of the Lender who originated the Loan is exempt from the licensing requirements under Financial Institutions Article, §§11-601 through 11-618, Annotated Code of Maryland.

**Affidavit of Mortgage Broker (on behalf of its employee who originated the mortgage loan):**
☐ I, _____ of _____, hereby affirm, under the penalties of perjury, that I am the (the "Broker").
The Broker's address is _____.
I am duly authorized by the Broker to execute this affidavit. The employee of the Broker, _____ (the "Employee"), is the individual who originated the Loan. The Employee, in connection with the Loan, is exempt from the licensing requirements under Financial Institutions Article, §§11-601 through 11-618, Annotated Code of Maryland.

DocMagic eForms
www.docmagic.com

Page 1 of 2

Mdli.msc.xml

LIBER 14030 FOLIO 418

I SOLEMNLY AFFIRM, under the penalties of perjury and upon personal knowledge, that the contents of the foregoing paper are true.

4/20/12 _____ Date

___/s/ R.D. B_____ Signature of Affiant (Signing on behalf of Lender)

BRIAN D. BOGDAN, VICE PRESIDENT  Print Name and Title of Affiant

_____ Date

_____ Signature of Affiant (Individual Mortgage Originator)

_____ Print Name of Affiant

_____ Date

_____ Signature of Affiant (Signing on Behalf of Mortgage Broker)

_____ Print Name and Title of Affiant

DocMagic eForms
www.docmagic.com